**Tyler E. Staggs, OSB No. 065172**
Email: tyler@spoonerstaggs.com
**David E. Smith, OSB No. 124591**
Email: dave@spoonerstaggs.com
Spooner Staggs Trial Lawyers
530 Center Street N.E., Suite 712
Salem, OR 97301
Phone: (503) 378-7777
Fax: (503) 588-5899

Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| FRED LOTFI, | Case No. 3:24-cv-01616-AR |
| Plaintiff, | **Plaintiff's** |
| | **MOTION FOR SUMMARY** |
| vs. | **JUDGMENT ON FIRST CLAIM** |
| | **FOR RELIEF** |
| PROGRESSIVE UNIVERSAL | **Pursuant to Fed. R. Civ. P. 56(a)** |
| INSURANCE COMPANY, | |
| | **Request for Oral Argument** |
| Defendant. | |

### LR 7-1(a) CERTIFICATION

The attorneys for the above-captioned parties made a good faith effort through

telephone conference to resolve the basis for this Motion and were unable to do so.

/ / /

/ / /

/ / /

/ / /

/ / /

# TABLE OF CONTENTS

LR 7-1(a) CERTIFICATION ................................................................................................ 1

TABLE OF CONTENTS...................................................................................................... 2

TABLE OF AUTHORITIES ................................................................................................ 3

MOTION............................................................................................................................ 5

MEMORANDUM OF LAW ................................................................................................ 5

I.    Introduction........................................................................................................... 5

II.   Undisputed Facts .................................................................................................. 6

III.  Legal Standards ..................................................................................................... 7

    A.    Summary Judgment Standard....................................................................... 7

    B.    Oregon law applies to the interpretation of Oregon insurance policies ...................... 8

IV.   The legislature intended policyholders to be able to access *excess* coverage on multiple policies ............................................................................................................................... 9

    A.    The history of the Uninsured Motorist Act supports that the legislature intended to provide UIM coverage when an insured occupied an owned vehicle that had insurance. ... 11

        1.    House Bill 1809 (1963)............................................................................ 11

        2.    Interim Committee on Insurance (1963-1965) ....................................... 13

        3.    House Bill 1041 (1965)............................................................................ 15

        4.    House Bill 1506 (1967)............................................................................ 16

    B.    The legislature's expansion of uninsured motorist coverage to mandate inclusion of *underinsured* motorist coverage. ........................................................................................ 17

    C.    The 2015 amendments expanded UIM coverage to further shift the risk of uninsured damages from the insured to the insurer. ................................................................................. 18

    D.    Affording coverage under these facts is consistent with overall legislative intent in enacting the Uninsured Motorist Act from inception to now ............................................... 19

V.    Additionally, the exclusion in the Progressive policies are overbroad as a matter of law because "the insured vehicle exception" is narrower in application than permitted by ORS 742.504(4)(b) ........................................................................................................................... 20

    A.    The policies provide coverage because the exclusions will be stricken from the policies .............................................................................................................................................. 21

        1.    The motorcycle policy exclusion is overbroad .................................... 21

        2.    The motorhome policy exclusion is overbroad.................................... 23

        3.    The exclusions in both policies are less favorable than ORS 742.504(4)(b).......... 24

VI.   Conclusion............................................................................................................ 26

CERTIFICATE OF SERVICE ............................................................................................ 27

## TABLE OF AUTHORITIES

**Cases - U.S. Supreme Court**
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................................... 8
*Gasperini v. Center for Humanties, Inc.*, 518 U.S. 415 (1996) ........................................ 8

**Cases - U.S. District Court, District of Oregon**
*Snook v. St. Paul Fire & Marine Ins. Co.*, 220 F. Supp. 314 (D. Or. 1963) ..................... 8

**Cases - Oregon Supreme Court**
*Batten v. State Farm Mut. Auto. Ins. Co.,* 368 Or. 538, 495 P.3d 1222 (2021) .............. 6, 8, 18, 19
*Carrigan v. State Farm Mut. Auto. Ins. Co.*, 326 Or. 97, 949 P.2d 705 (1997) ................... 9
*Erickson v. Farmers Ins. Co. of Oregon*, 331 Or. 681, 21 P.3d 90 (2001)............................... 8, 26
*George B. Wallace Co. v. State Farm. Mut. Auto. Ins. Co.*, 220 Or. 520, 349 P.2d 789 (1965).. 14
*Lund v. Mission Ins. Co.*, 270 Or. 461, 528 P.2d 78 (1974) ........................................ 12
*PGE v. Bureau of Labor and Industries*, 317 Or. 606, 859 P.2d 1143 (1993) .............................. 9
*State v. Gaines*, 346 Or. 160, 206 P.3d 1042 (2009) ..................................................... 9
*To v. State Farm Mut. Ins.*, 319 Or. 93, 873 P.2d 1072 (1994) ...................................... 12
*Vega v. Farmers Ins. Co. of Oregon*, 323 Or. 291, 918 P.2d 95 (1996)................................. passim
*Vogelin v. Am. Family Mut. Ins. Co.*, 346 Or. 490, 213 P.3d 1216, 1224 (2009)........................ 18
*ZRZ Realty Co. v. Beneficial Fire & Cas. Ins. Co.*, 349 Or. 117, 241 P.3d 710 (2010)................ 9

**Cases - Oregon Court of Appeals**
*Cantu v. Progressive Classic Ins. Co.*, 325 Or. App. 184, 528 P.3d 1187, *rev. den.*, 371 Or. 333
   (2023) ....................................................................................................... 20, 25

**Statutes**
ORS 731.008 ..................................................................................................... 9
ORS 731.016 ..................................................................................................... 9
ORS 736.317 (1959) ........................................................................................... 11
ORS 742.500 to 742.506 ...................................................................................... 8
ORS 742.502(2)(a) (2013) .................................................................................... 18
ORS 742.504 .......................................................................................... 8, 18, 20, 21
ORS 742.504(1)(a) .......................................................................................... 19, 21
ORS 742.504(2)(d)(A) ......................................................................................... 24
ORS 742.504(2)(j) .............................................................................................. 19
ORS 742.504(2)(m) ............................................................................................. 25
ORS 742.504(4)(b) ........................................................................................ passim
ORS 742.504(9)(a) .............................................................................................. 20
ORS 743.792 (1967) ....................................................................................... 11, 16
ORS 743.792 (1981) ........................................................................................... 17
ORS 743.792(4)(b) (1967) .................................................................................... 15
ORS 743.792(4)(b) (1981) .................................................................................... 17
ORS 7443.792(4)(b) (1967) .................................................................................. 11

**Rules**
Fed. R. Civ. Pro. 56(a) ........................................................................................ 8

**Legislative History**

Final Draft of Uninsured Motorist Act, Interim Committee on Insurance, Subcommittee #4, Oct. 1, 1964..............................................................................................................13

HB 1041 § 3(4)(b) (1965), enrolled bill (Apr. 28, 1965)..............................................................15

HB 1809 (1963), House Amendments (Apr. 24, 1963),.................................................................12

HB 1809 (1963), introduced bill (Mar. 27, 1963).........................................................................12

House Bill (HB) 1041 (1965) ..............................................................................13, 15, 16, 17

House Bill (HB) 1506 (1967) ......................................................................................16, 17

House Bill (HB) 1809 (1963) ......................................................................................11, 12

Letter from Jim Fletcher to Jim Redden (Sep. 1, 1964), attached to Minutes, Interim Committee on Insurance, Subcommittee #4, Sep. 18, 1964 (emphasis added)..........................................14

Masters, William, Statement in Support of HB 1041 as Amended (Apr. 13, 1965), 3, attached to Minutes, Senate Committee on Financial Affairs, Apr. 13, 1965............................................16

Minutes, House Committee on Financial Affairs, Apr. 25, 1967.....................................................16

Minutes, Interim Committee on Insurance, Subcommittee #4, Mar. 13, 1964................................13

Minutes, Interim Committee on Insurance, Subcommittee on Reserve, Surplus, and Capital Requirements of Insurance Companies Engaged in the Business of Casualty or Disability Insurance (cited hereinafter as Subcommittee #4), Feb. 15, 1964............................................13

Minutes, Senate Committee on Insurance, Banking, Retirement, Jan. 23, 1981............................18

Minutes, Senate Committee on Judiciary, HB 1809, May 16, 1963 ..............................................12

Or. Laws 1959, ch. 413 ..............................................................................................................11

Or. Laws 1981, ch. 482 ..............................................................................................................18

SB 411 (2015), enrolled SB 411-A (Mar. 5, 2015) ..............................................................18, 19

Senate Bill (SB) 31 (1981)..................................................................................................17, 18

Senate Bill (SB) 411 (2015).................................................................................................18

**MOTION**

COMES NOW, Plaintiff, Fred Lotfi, by and through his attorney, David E. Smith and Spooner Staggs Trial Lawyers, and moves the court for an Order granting summary judgment in his favor on Plaintiff's First Claim for Relief. In support of this Motion, Plaintiff relies upon the district court's file in its entirety, the Joint Statement of Agreed Facts (ECF No. 9) and attached exhibits (ECF Nos. 9-1 – 9-6), the Declaration of David E. Smith and attached exhibits, and the Memorandum of Law set forth below.

**MEMORANDUM OF LAW**

## I.    Introduction

Plaintiff, Fred Lotfi, sustained serious injuries to his head, neck, back, and left elbow, resulting from a motor-vehicle accident when he was rear-ended by an underinsured motorist. He was driving his Isuzu Rodeo that was insured by USAA, and at the time of the accident, he also owned a motorcycle and a motorhome that were both insured by defendant Progressive Universal Insurance Company ("Progressive") under separate policies. Plaintiff's damages exceeded the underinsured driver's liability coverage and his primary underinsured motorist ("UIM") coverage through USAA, so he sought excess UIM coverage under both Progressive policies. Progressive denied UIM coverage under both policies, citing a policy provision that excluded UIM coverage when an insured occupied an owned vehicle not insured under the policy.

Progressive's denial of UIM coverage is contrary to Oregon law. When enacting the uninsured/underinsured ("UM/UIM") statutes, the legislature specifically intended ORS 742.504(4)(b) to exclude UM/UIM coverage to an insured occupying an *uninsured* vehicle owned by the insured to prevent the insured from obtaining coverage on multiple vehicles without purchasing insurance on those vehicles. That is not what happened here. In this case,

Plaintiff <u>did</u> purchase insurance for the Isuzu Rodeo. However, his damages exceeded the limit of that insurance. Under those facts, he is entitled under Oregon law to stack the UIM coverage he purchased on his Progressive policies in excess of the insurance policy he purchased for the Isuzu Rodeo. *Batten v. State Farm Mut. Auto. Ins. Co.,* 368 Or. 538, 559, 495 P.3d 1222 (2021).

Plaintiff brought this action against Progressive seeking two claims for relief. The First Claim for Relief seeks a declaration that the exclusion relied upon by Progressive in both policies is unenforceable requiring Progressive to provide UIM coverage to Plaintiff. The Second Claim for Relief seeks payment under the Progressive policies for Progressive's breach of contract in failing to pay any benefits. This Motion for Summary Judgment concerns Plaintiff's First Claim for Relief only. Because the expressed intent of the legislature, as set forth in more detail below, was only to exclude coverage to uninsured vehicles. Therefore, both exclusions at issue are void and unenforceable, entitling Plaintiff to summary judgment on his claim for declaratory relief.

## II.    Undisputed Facts

The undisputed facts necessary to resolving this Motion and Progressive's anticipated cross-Motion are set forth in the parties' Joint Statement of Agreed Facts (ECF No. 9) and are adopted in their entirety. A summary of the relevant facts are set forth below.

- Plaintiff was injured in a motor-vehicle collision caused by an underinsured driver while occupying his 1995 Isuzu Rodeo (Joint Statement of Agreed Facts, p. 1 at ¶ 1 (ECF No. 9));

- Plaintiff owned the 1995 Isuzu Rodeo and insured the vehicle, along with two other vehicles, on a policy issued by USAA General Indemnity Company (referred to as the USAA policy) (Joint Statement of Agreed Facts, pp. 1-2 at ¶ 1 and p. 3 at ¶ 6 (ECF No.

9); USAA policy Declarations page, Ex. 1 to Joint Statement of Agreed Facts (ECF No. 9-1); Isuzu Rodeo title, Ex. 4 to Joint Statement of Agreed Facts (ECF No. 9-4));

- Plaintiff was the named insured under a motor-vehicle liability policy issued by Progressive to cover his 1986 Honda VT500, referred to as the motorcycle policy (Joint Statement of Agreed Facts, p. 2 at ¶ 2.a (ECF No. 9));

- Plaintiff was also the named insured under a motor-vehicle liability policy issued by Progressive to cover his 1989 Tioga Arrow, referred to as the motorhome policy (Joint Statement of Agreed Facts, p. 2 at ¶ 2.b (ECF No. 9));

- The motorcycle and motorhome policies were in effect on the date of the subject motor-vehicle collision and contained UIM coverage (Joint Statement of Agreed Facts, p. 2 at ¶ 2 (ECF No. 9); Motorcycle policy, p. 1, Ex. 2 to Joint Statement of Agreed Facts (ECF No. 9-2); and Motorhome policy, p. 2, Ex. 3 to Joint Statement of Agreed Facts (ECF No. 9-3));

- Plaintiff sought UIM coverage from Progressive under the motorcycle and motorhome policies in excess of the UIM coverage provided to Plaintiff by USAA under the USAA policy (Joint Statement of Agreed Facts, p. 2 at ¶ 3 (ECF No. 9)); and

- Progressive denied UIM coverage under both policies on the basis that Plaintiff owned the Isuzu Rodeo and it did not qualify as a covered vehicle under either policy (Coverage denial letters, Exhibits 5 and 6 to Joint Statement of Agreed Facts (ECF Nos. 9-5 and 9-6).

## III.    Legal Standards

### A.    Summary Judgment Standard

Summary judgment is appropriate on claims where "there is no genuine dispute as

to any material fact and * * * the movant is entitled to judgment as a matter of law." Fed. R. Civ.

Pro. 56(a). A party can move for summary judgment on all claims, some claims, or part of a

claim. *Id.* Material facts are those facts that may affect the outcome of the case. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is only genuine if

there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

      **B.**     **Oregon law applies to the interpretation of Oregon insurance policies**

      The district court applies the substantive law of the jurisdiction in a diversity

action. *Gasperini v. Center for Humanties, Inc.*, 518 U.S. 415, 427 (1996). Because this case

involves a dispute over the interpretation of Oregon insurance policies, Oregon law applies.

*Snook v. St. Paul Fire & Marine Ins. Co.*, 220 F. Supp. 314, 316-17 (D. Or. 1963).

      The UIM statutes, ORS 742.500 to 742.506, govern the provisions of UIM

coverage in all Oregon-issued motor-vehicle liability policies, and specifically, ORS 742.504

contains the "model policy provisions" that set forth the minimum UIM coverage that every

Oregon-issued motor-vehicle liability policy must provide. *Batten v. State Farm Mut. Auto. Ins.*

*Co.,* 368 Or. 538, 542, 495 P.3d 1222 (2021). For instance, a policy provision can provide UIM

coverage that is similar or more favorable than ORS 742.504, but a policy provision <u>cannot</u>

provide less favorable UIM coverage than ORS 742.504. *Batten*, 368 Or. at 542; and *Vega v.*

*Farmers Ins. Co. of Oregon*, 323 Or. 291, 300-02, 918 P.2d 95 (1996). Any policy provision that

is less favorable than the UIM coverage afforded by ORS 742.504 must be stricken from the

policy. *Erickson v. Farmers Ins. Co. of Oregon*, 331 Or. 681, 687-88, 21 P.3d 90 (2001). A

provision stricken from the policy in this manner <u>is not</u> replaced with the statutory provision, and

instead, the policy is interpreted as if the offending provision was never there. *Id.* at 687.

      Conducting this analysis requires the court to interpret various UIM statutes.

Oregon courts follow the analytical framework discussed in *PGE v. Bureau of Labor and*

*Industries*, 317 Or. 606, 859 P.2d 1143 (1993) and in *State v. Gaines*, 346 Or. 160, 206 P.3d

1042 (2009), which requires the court to review the text, context, and legislative history of a

statute in order to determine the legislature's intent. *PGE*, 317 Or. at 611; and *Gaines*, 346 Or. at

171-72. As a matter of public policy, Oregon courts interpret the Insurance Code, which includes

the UIM statutes at issue here, liberally for the protection of the insurance-buying public by

resolving any ambiguities in favor of the insured. ORS 731.008 and ORS 731.016; *see also*

*Carrigan v. State Farm Mut. Auto. Ins. Co.*, 326 Or. 97, 104-05, 949 P.2d 705 (1997). Finally,

the insurer bears the burden to prove that an exclusion applies. *ZRZ Realty Co. v. Beneficial Fire*

*& Cas. Ins. Co.*, 349 Or. 117, 127, 241 P.3d 710 (2010).

## IV.  The legislature intended policyholders to be able to access *excess* coverage on multiple policies

This is a straightforward issue of statutory construction. Progressive asserts that

an exclusion in both the motorcycle and motorhome policies excludes coverage to Plaintiff

because Plaintiff owned the Isuzu Rodeo he occupied in the subject motor-vehicle collision, and

the Isuzu Rodeo was not a covered vehicle under either of the Progressive policies. Motorcycle

policy, p. 20, Ex. 2 to Joint Statement of Agreed Facts (ECF No. 9-2); Motorcycle policy denial

letter, p. 2, Ex. 5 to Joint Statement of Agreed Facts (ECF No. 9-5); Motorhome policy, p. 24,

Ex. 2 to Joint Statement of Agreed Facts (ECF No. 9-2); and Motorhome policy denial letter, p.

2, Ex. 6 to Joint Statement of Agreed Facts (ECF No. 9-6).

Plaintiff is not seeking *primary* UIM coverage from Progressive under the two

policies at issue in this litigation. Plaintiff insured the Isuzu Rodeo under a policy issued by

USAA, and Plaintiff already received *primary* UIM coverage from USAA. Joint Statement of

Agreed Facts, pp. 1-2 at ¶ 1. Plaintiff's damages, however, exceed the primary policy provided

by USAA. *See* Complaint, p. 3 at ¶¶ 6-7 (ECF No. 2-2). Plaintiff seeks *excess* UIM coverage

from Progressive under the motorcycle and motorhome policies. Joint Statement of Agreed

Facts, p. 2 at ¶ 3.

The exclusion in both Progressive policies that Progressive is relying upon here is

based on ORS 742.504(4)(b), which states as follows:

> This coverage does not apply to bodily injury to an insured while
> occupying a vehicle, other than an insured vehicle, owned by, or
> furnished for the regular use of, the named insured or any relative
> resident in the same household, or through being struck by the
> vehicle.

This language excludes coverage to an insured that occupies an owned vehicle unless that

vehicle qualifies as an insured vehicle. This exception for "insured vehicle" refers to vehicles

with insurance, or that would otherwise apply as an insured vehicle under a motor-vehicle

liability policy.

The legislature, in enacting the exclusionary language at ORS 742.504(4)(b) as

part of the model policy provisions in ORS 742.504, did not intend to exclude UIM coverage to

an insured while occupying a household vehicle insured by a separate policy. Rather, the

expressed intent of the exclusion was to prevent an insured from purchasing insurance for only

one vehicle to use that policy to cover all vehicles within the household.

This legislative intent, as discussed below, is clear upon review of the legislative

history in enacting the Uninsured Motorist Act and two subsequent expansions of the UIM

statutes support the overall purpose of the Insurance Code to protect the insurance-buying public

by shifting the burden of uninsured damages from the public to insurers: the inclusion of UIM

coverage in 1981; and the 2015 amendments that, most significantly, changed the "trigger" for

UIM coverage from a comparison of the policy limits to the comparison of the insured's

damages.[1]

      **A.**      **The history of the Uninsured Motorist Act supports that the legislature intended to provide UIM coverage when an insured occupied an owned vehicle that had insurance.**

      ORS 742.504(4)(b) as it exists today is largely the same as enacted in 1967.[2] The

legislature enacted the Uninsured Motorist Act and the governor signed it into law after the work

of three legislative sessions and at least one interim committee. *See Vega*, 323 Or. at 305 n. 12

(discussing this history). Therefore, the intent of including ORS 742.504(4)(b) in the model

policy provisions remains unchanged to this day.

      **1.**      **House Bill 1809 (1963)**

      In 1959, Oregon joined a minority of states requiring motor-vehicle liability

insurers to include uninsured motorist coverage in their liability policies. Or. Laws 1959, ch.

413, § 1. The resulting statute, ORS 736.317 (1959), was imperfect and frequently litigated. *To v.*

---

[1] More often described as allowing an insured to "stack" the full UIM policy limit of their policy on top of the tortfeasor's liability coverage.

[2] Compare ORS 742.504(4)(b) (2019) with ORS 743.792(4)(b) (1967) ORS 742.504(4)(b) (2019) stated as follows:

> This coverage does not apply to bodily injury to an insured while occupying a vehicle, other than an insured vehicle, owned by, or furnished for the regular use of, the named insured or any relative resident in the same household, or through being struck by the vehicle.

ORS 743.792(4)(b) (1967) stated as follows:

> This coverage does not apply to bodily injury to an insured while occupying a vehicle (other than an insured vehicle) owned by, or furnished for the regular use of, the named insured or any relative resident in the same household, or through being struck by such a vehicle.

*State Farm Mut. Ins.*, 319 Or. 93, 109, 873 P.2d 1072 (1994) (Graber, J. dissenting); and *Lund v. Mission Ins. Co.*, 270 Or. 461, 464–65, 528 P.2d 78 (1974).

  In reaction to this litigation, Senior Judge Robert E. Jones,[3] then a representative in the Oregon House of Representatives, introduced House Bill (HB) 1809 (1963). The bill included the following language similar to what is now ORS 742.504(4)(b);

> (4) A provision as follows: EXCLUSIONS: This indorsement does not apply:
>
> * * *
>
> (b) To bodily injury to an insured while occupying an automobile owned by the named insured or any relative resident in the same household, or through being struck by such an automobile.

HB 1809 (1963), introduced bill (Mar. 27, 1963), 7 at lines 15-17 (see Ex. 1 to Smith declaration.)[4] This is fairly similar to today's version, absent the "insured vehicle exception" to the exclusion and the "furnished for regular use" language. However, the house amended HB 1809 (1963) to delete the exclusion from the engrossed bill before sending HB 1809 to the senate. *See* HB 1809 (1963), House Amendments (Apr. 24, 1963), 2 at line 7 (Ex. 2 to Smith decl.). The bill was then tabled by the Senate Judiciary Committee due to disagreements between the insurance industry and plaintiff lawyer representatives, resulting in the proposal of an interim committee to provide both sides an opportunity to work out a compromise bill. *See Vega*, 323 Or. at 305 n. 12 (discussing this history); and Minutes, Senate Committee on Judiciary, HB 1809, May 16, 1963, 3 (Ex. 3 to Smith decl.).

---

[3] *See* https://en.wikipedia.org/wiki/Robert_E._Jones_(judge) (last accessed Nov. 8, 2024).

[4] For the court's convenience, most of the legislative history that is cited herein is attached as exhibits to the Declaration of David E. Smith filed contemporaneously with this Motion.

2.      **Interim Committee on Insurance (1963-1965)**

The 1963-1965 Interim Committee on Insurance took up the issue and referred the

matter to a subcommittee. *See* Minutes, Interim Committee on Insurance, Subcommittee on

Reserve, Surplus, and Capital Requirements of Insurance Companies Engaged in the Business of

Casualty or Disability Insurance (cited hereinafter as Subcommittee #4), Feb. 15, 1964, 1 (Ex. 4

to Smith decl.). Insurance industry representative, Bill Masters, testified that the deletion of the

exclusion at issue was one of the objections to HB 1809 by insurers. Minutes, Interim Committee

on Insurance, Subcommittee #4, Mar. 13, 1964, 6 (Ex. 5 to Smith decl.). Mr. Masters described

the exclusion as "[excluding' coverage if riding in or struck by an uninsured automobile owned

in the household * * *." *Id.* That statement clarifies that the intent of the exclusion was to prevent

an insured from obtaining *primary* UIM coverage on multiple vehicles by insuring one vehicle

and leaving all of his other vehicle uninsured.

The draft adopted by the Interim Committee on Insurance, which would become

House Bill (HB) 1041 (1965), re-introduced the exclusion as follows:

> (4) A provision as follows: EXCLUSIONS:
>
> * * *
>
> (b) This coverage does not apply to bodily injury to an
> insured while occupying a vehicle (other than an insured vehicle)
> owned by, or furnished for the regular use of, the named insured or
> any relative resident in the same household, or through being
> struck by such an automobile.

*See* Final Draft of Uninsured Motorist Act, Interim Committee on Insurance, Subcommittee #4,

Oct. 1, 1964, 8 (Ex. 6 to Smith decl.). Notably, this final draft adds the "insured vehicle

exception" to the exclusion and broadens the scope of the exclusion to include vehicles furnished

for the regular use of the named insured or household relatives. These additions further clarify

the intent of the drafters. As previously drafted, without the "insured vehicle exception" the

exclusion would effectively exclude all coverage, even when an insured occupied the described

vehicle on the policy. Both of these additions clarify that the exclusion was not intended to

exclude vehicles for which the insured had purchased insurance for, but instead, the intent of the

exclusion was to exclude UIM coverage to vehicles that the insured should have purchased UIM

coverage for because the insured either owned the vehicle, regularly used the vehicle, or had a

right to regularly use the vehicle.[5]

   Further, the intent of the exclusion was clearly stated by the drafters of the

amendment to include the exclusion as follows:

> "The first proposed exclusion is to carry out the rating intent
> discussed by industry representatives and subcommittee members
> at an earlier date; **to charge a premium for UMC on each owned
> auto for which the company has issued a liability policy and to
> exclude coverage on such autos which the insured has not seen
> fit to insure**. The exclusion is necessary to effect that rating intent
> since the Insuring Agreements on pages 2 and 3 of the rough draft
> of the bill don't require the insured to be in an "insured" auto to be
> protected by this coverage. Thus, in the absence of this conclusion
> (*sic*), the insured could insure one his cars and automatically
> receive free UMC coverage on his other automobiles. This would
> serve to greatly increase the UMC rate and be very inequitable to
> persons who own only one car."

Letter from Jim Fletcher to Jim Redden (Sep. 1, 1964), attached to Minutes, Interim Committee

on Insurance, Subcommittee #4, Sep. 18, 1964 (emphasis added) (Ex. to Smith Decl. at 8 and

11). Therefore, the textual changes to the draft bill and testimony all point to the same

conclusion: the exclusionary language adopted by the subcommittee was intended to prevent an

---

[5] In *George B. Wallace Co. v. State Farm. Mut. Auto. Ins. Co.*, 220 Or. 520, 526, 349 P.2d 789
(1965), the Oregon Supreme Court held that a vehicle was furnished for a person's regular use if
that person had a right regularly use the vehicle, express or implied, any time the vehicle was
available.

insured from obtaining uninsured motorist coverage on multiple household vehicles he did not

insure by purchasing uninsured motorist coverage on only one vehicle.

> **3.      House Bill 1041 (1965)**

The final draft approved by the interim committee was introduced as House Bill

(HB) 1041 (1965) on January 11, 1965. The legislative record does not include much discussion

of the exclusion at issue. The enrolled bill that passed both the house and senate contained the

following exclusionary language that is identical to what was eventually enacted and signed into

law as ORS 743.792(4)(b) (1967). That language is:

> "This coverage does not apply to bodily injury to an insured while
> occupying a vehicle (other than an insured vehicle) owned by, or
> furnished for the regular use of, the named insured or any relative
> resident in the same household, or through being struck by such a
> vehicle."

HB 1041 § 3(4)(b) (1965), enrolled bill (Apr. 28, 1965), 3 (Ex. 8 to Smith decl.).

The only discussion applicable to the exclusion is from the written testimony of

insurance industry representative, Bill Masters, which stated as follows when discussing the

"other insurance" provision:

> "The 'other insurance' provisions are another feature of the policy
> causing a great deal of confusion and misunderstanding. On Page
> 7, Section 9 (a) of HB 1041 is a provision that where an insured is
> injured while occupying a vehicle which is not owned by him the
> UM coverage in the policy covering the automobile in which he is
> riding is the primary insurance and his own UM coverage is excess
> to the primary insurance, **but his own insurance only apply in
> the amount by which his own insurance exceeds the coverage
> of the automobile.** * * *

> "Also, note that under "other insurance" page 7, Section 9 (b) in a
> situation **where a party has coverage of his own** and relatives or
> members of his household have an insured car **and he is also a
> named insured under this other policy or where the insured
> has two cars and both are covered by the UM coverage** and is

> injured while crossing the street as a pedestrian. **In this case, the**
> **two policies would prorate and each would bear one-half of the**
> **loss.** * * *"

Masters, William, Statement in Support of HB 1041 as Amended (Apr. 13, 1965), attached to

Minutes, Senate Committee on Financial Affairs, Apr. 13, 1965 (emphasis added) (Ex. 9 to

Smith decl.). This testimony confirms that the legislature contemplated scenarios where the

insured had multiple policies for vehicles owned by the insured or that were in his household,

and that in these scenarios, the statute would require coverage.

    HB 1041 (1965) was passed by the house and senate. However, the governor

vetoed the bill, so the Uninsured Motorist Act did not yet become Oregon law in 1965. *Vega*,

323 Or. at 305 n. 12 (discussing this history).

### 4.    House Bill 1506 (1967)

    The Uninsured Motorist Act seemed dead at the end of the 1965 legislative

session. However, it was revived in 1967, when the House Committee on Financial Affairs

incorporated the provisions of HB 1041 (1965) into House Bill (HB) 1506 (1967). Minutes,

House Committee on Financial Affairs, Apr. 25, 1967, 3 (Ex. 10 to Smith decl.).

    There is no significant discussions of the exclusionary language at issue in this

case within the legislative record of HB 1506 (1967). The bill passed both the house and senate,

and after receiving the governor's support this time, the bill was enacted and signed into law as

ORS 743.792 (1967) with the following language included:

> "This coverage does not apply to bodily injury to an insured while
> occupying a vehicle (other than an insured vehicle) owned by, or
> furnished for the regular use of, the named insured or any relative
> resident in the same household, or through being struck by such a
> vehicle."

Or. Laws 1967, ch. 482 § 3(4)(b).

Therefore, because there was no discussion by the members of the legislature or any legislative committee testimony concerning this exclusionary language during the 1965 or 1967 legislative sessions when HB 1041 (1965) and HB 1506 (1967) were at issue, the only conclusion that can be drawn is that the stated purpose of the drafters of the amendment to include this language during the interim committee sessions of 1964 was adopted by the legislature.

Then, as discussed above, the reason the legislature included this language was to prevent an insured from obtaining *primary* coverage on multiple vehicles when the insured only purchased coverage for one vehicle. The legislature did not intent to exclude *excess* coverage that a policy might provide when an insured occupies other vehicles he owns or has regular access to that already have primary insurance.

**B.    The legislature's expansion of uninsured motorist coverage to mandate inclusion of *underinsured* motorist coverage.**

The next significant expansion of uninsured motorist coverage occurred in 1981 when the legislature required uninsured motorist coverage to include *underinsured* motorist coverage with the passage of Senate Bill (SB) 31 (1981). That bill did not change the exclusionary language at issue here, which had not changed since 1967.[6] What the bill did, though, in addition to mandating the inclusion of UIM coverage, was to make UIM coverage subject to the model policy provisions set forth in what was then ORS 743.792 (1981) but has

---

[6] For reference, ORS 743.792(4)(b) (1981) stated as follows:

> "This coverage does not apply to bodily injury to an insured while occupying a vehicle (other than an insured vehicle) owned by, or furnished for the regular use of, the named insured or any relative resident in the same household, or through being struck by such a vehicle."

since been renumbered to ORS 742.504. *See* ORS 743.789(3), *enacted by* Or. Laws 1981, ch. 482 § 2(3).

   The purpose of both UM and UIM coverage is to place the injured policyholder in the same position as if the tortfeasor had not been uninsured or underinsured. *Vega* 323 Or. at 305-06. Prior to SB 31 (1981), a policyholder injured by an uninsured motorist was in a better position than a policyholder injured by an underinsured motorist. This bill expanded the scope of UM coverage to include UIM coverage in order to fix that problem. The insurance commissioner's representative testified that that the original act's failure to include UIM coverage was an oversight. Minutes, Senate Committee on Insurance, Banking, Retirement, Jan. 23, 1981, 5 (Ex. 11 to Smith decl.).

  **C.** **The 2015 amendments expanded UIM coverage to further shift the risk of uninsured damages from the insured to the insurer.**

   The legislature further expanded the scope of UIM coverage significantly by enacting Senate Bill (SB) 411 (2015). SB 411 (2015) changed the way UIM benefits were calculated from a "limits-limits" comparison to a "limits-damages" comparison. *Batten*, 368 Or. at 555-56 (explaining this legislative change). Prior to the 2015 amendments, an insurer could offset the amount of the underinsured driver's liability limit from the amount of the UIM limits. ORS 742.502(2)(a) (2013); *see also Vogelin v. Am. Family Mut. Ins. Co.*, 346 Or. 490, 506, 213 P.3d 1216 (2009). Following the passage of SB 411 (2015), an insured is now entitled to "stack" the UIM limit on top of the underinsured driver's liability limit.

   However, to accomplish that result, SB 411 (2015) changed a significant amount of the model policy provisions at ORS 742.504. *See* SB 411 § 3 (2015), enrolled SB 411-A (Mar. 5, 2015), 3-9 (Ex. 12 to Smith decl.). In addition to this change, the 2015 amendments also did the following:

- Permit the stacking of UIM coverages from multiple policies (*see Batten*, 368 Or. at 540);

- Permit the recovery of punitive damages the insured is legally entitled to recover from the underinsured driver under the UM/UIM coverage by changing ORS 742.504(1)(a) to refer to "damages" and removing the qualifiers "general and special" from the provision and subsequent definition at ORS 742.504(2)(j) (*see* SB 411 § 4 (2015), enrolled SB 411-A (Mar. 5, 2015), 9 (Ex. 12 o Smith decl)); and

- Increase the time limitation for payment of medical expenses under the Personal Injury Protection (PIP) coverage from one year to two years (*see* SB 411 § 4 (2015), enrolled SB 411-A (Mar. 5, 2015), 9 (Ex. 12 to Smith decl.)).

The common thread here is that each of these changes shift the burden of uninsured (or underinsured) damages from the insured to the insurer.

When an insured's damages exceed the available limits of all policies, the insured can now access the coverage of multiple policies rather than be limited by the amount one policy exceeds the limits of the tortfeasor's liability policy. When an insured is entitled to punitive damages, the insured can recover that amount under the UM/UIM coverage rather than be forced to obtain a judgment and collect against the underinsured driver. And if an insured's medical treatment exceeds one year, then the insured can still access their PIP coverage for payment of their medical expenses. All of these scenarios shift the risk from the insured to the insurer.

**D.     Affording coverage under these facts is consistent with overall legislative intent in enacting the Uninsured Motorist Act from inception to now**

From the inception of the Uninsured Motorist Act and each significant amendment, the clear goal of the act is to shift the burden of uninsured or underinsured damages from the insured to the insurer. Given the stated intent of the drafters of this exclusion and this overall goal, it is evident that the legislature never intended to allow Progressive to deny UIM

coverage to Plaintiff under these facts. Plaintiff is not insuring one vehicle to obtain coverage on multiple vehicles. Instead, he has purchased insurance for each of his vehicles. If his damages exceed the limits of all of his insurance, then he is entitled to stack the coverages of his Progressive policies on top of his USAA policy.

The exclusion encourages people to purchase insurance for each of the vehicles they own. Otherwise, if a person does not purchase insurance for each vehicle they own, then they will not be afforded coverage for the uninsured vehicles by operation of ORS 742.504(4)(b) on any policies they do purchase. Excluding excess UIM coverage to Plaintiff under these facts does not support this purpose, because in this instance, Plaintiff purchased insurance for each vehicle he owns. He should be entitled to stack this coverage in accordance with ORS 742.504(9)(a).

Plaintiff seeks a declaration from this court in his First Claim for Relief that the exclusions at issue here are unenforceable under Oregon law. Because those exclusions provide less favorable coverage than the coverage intended by the legislature in ORS 742.504, Plaintiff is entitled to summary judgment on his claim for declaratory relief. Therefore, this court should grant Plaintiff's Motion for Summary Judgment on First Claim for Relief.

**V.    Additionally, the exclusion in the Progressive policies are overbroad as a matter of law because "the insured vehicle exception" is narrower in application than permitted by ORS 742.504(4)(b)**

The exclusions in both policies are overbroad and should be stricken from the each policy as unenforceable. The definition of vehicle (or similar term) in both Progressive policies is narrower than permitted by Oregon law. *See Cantu v. Progressive Classic Ins. Co.*, 325 Or. App. 184, 528 P.3d 1187, *rev. den.*, 371 Or. 333 (2023) (striking provision that limited definition of vehicle by number of wheels). Because the definition of "vehicle" is narrower than

permitted by Oregon law, the "insured vehicle exception" to the exclusion is broader, and

therefore less favorable than the coverage provided by ORS 742.504.

**A.      The policies provide coverage because the exclusions will be stricken from the policies**

Both Progressive policies track the language of ORS 742.504(4)(b) except for the

"insured vehicle" exception to the exclusion. Similar to ORS 742.504(1)(a), both policies

provide UIM coverage to an insured person injured as a result of an uninsured or underinsured

motorist.[7] The exclusionary language of both policies then removes coverage when the insured

occupies an owned vehicle that does not qualify as a covered vehicle under that particular policy.

**1.      The motorcycle policy exclusion is overbroad**

Progressive relied upon the following exclusion to deny UIM coverage to Plaintiff

under the motorcycle policy:

> **EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III.**

---

[7] For instance, the insuring agreement of the UIM coverage of both policies states:

> **INSURING AGREEMENT—
> UNINSURED/UNDERINSURED MOTORIST
> BODILYINJURY COVERAGE**
>
> If you pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle** because of **bodily injury**:
>
> 1.      sustained by an **insured person**;
>
> 2.      caused by an accident; and
>
> 3.      arising out of the ownership, maintenance, or use of an **uninsured motor vehicle** or **underinsured motor vehicle**.

Motorcycle policy, pp. 16-17, Ex. 2 to Joint Statement of Agreed Facts (ECF No. 9-2) (bolding emphasis in original); and motorhome policy, p. 20, Ex. 3 to Joint Statement of Agreed Facts (ECF No. 9-3) (bolding emphasis in original).

> Coverage under this Part III will not apply:
> 1.    to **bodily injury** sustained by any person while
>       **occupying** or being struck by a motor vehicle that is
>       owned by or furnished for the regular use of **you** or  a
>       **relative**. This exclusion does not apply to a **covered**
>       **motorcycle** that is insured under this Part III;
> * * *

Motorcycle policy, p. 20, Ex. 2 to Joint Statement of Agreed Facts (ECF No. 9-2); and

Motorcycle policy denial letter, p. 2, Ex. 5 to Joint Statement of Agreed Facts (ECF No. 9-5).

The policy, therefore, denies UIM coverage to an insured occupying an owned

"motor vehicle", unless that motor vehicle qualifies as a **covered motorcycle**, which is defined

as follows:

> 4.    "**Covered motorcycle**" means:
>       a.    any **motorcycle** shown on the **declarations page** for
>             the coverages applicable to that **motorcycle**;
>       b.    any **additional motorcycle**; and
>       c.    any **replacement motorcycle**.

Motorcycle policy, p. 8, Ex. 2 to Joint Statement of Agreed Facts (ECF No. 9-2). Further,

**motorcycle** is defined as follows:

> 6.    "**Motorcycle**" means any motorcycle, motorbike, motor
>       scooter, or motorized trike that is designed for operation
>       principally upon public roads and has at least two wheels,
>       but not more than three wheels.

Motorcycle policy, p. 8, Ex. 2 to Joint Statement of Agreed Facts (ECF No. 9-2). Because each

"sub-definition" to **covered motorcycle** incorporates the word, **motorcycle**, which is defined as

a vehicle with only two to three wheels, the exception to the exclusion only applies to

motorcycles or other two-wheeled or three-wheeled vehicles. For the reasons discussed below,

this exception is narrower than the "insured vehicle" exception to ORS 742.504(4)(b), and

therefore the exclusion is broader in application than ORS 742.504(4)(b).

2.      **The motorhome policy exclusion is overbroad**

Progressive relied upon the following exclusion to deny UIM coverage to Plaintiff

under the motorhome policy:

> **EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III.**
>
> Coverage under this Part III will not apply:
> 1.      to **bodily injury** sustained by any person while **occupying** or being struck by a motor vehicle that is owned by or furnished for the regular use of **you** or a **relative**.
>
>         This exclusion does not apply to a **covered vehicle** that is insured under this Part III;
> * * *

Motorhome policy, p. 24, Ex. 2 to Joint Statement of Agreed Facts (ECF No. 9-2); and

Motorhome policy denial letter, p. 2, Ex. 6 to Joint Statement of Agreed Facts (ECF No. 9-6).

The policy, therefore, denies UIM coverage to an insured occupying an owned

vehicle, unless that vehicle qualifies as a **covered vehicle** the motorhome policy excludes UIM

coverage as written. **Covered vehicle** is defined as follows:

> 4.      "**Covered vehicle**" means:
>         a.      any **vehicle** owned by **you** and shown on the **declarations page** for the coverages applicable to that **vehicle**;
>         b.      any **additional vehicle**;
>         c.      any **replacement vehicle**; and
>         d.      a **trailer** owned by **you**.

Motorhome policy, p. 8, Ex. 3 to Joint Statement of Agreed Facts (ECF No. 9-3). Further,

**vehicle** is defined as follows:

> 14.     "**Vehicle**" means a land motor vehicle, including its permanently attached equipment, that:
>         a.      has built-in:
>                 (i)     cooking, refrigeration, sleeping, and bathroom facilities; and

        (ii)     self-contained:
               (a)     heating and/or air-
                          conditioning;
               (b)     drinking water supply
                          system; and
               (c)     110-125 volt electrical power
                          system; or
    b.     is shown on the **declarations page** and
          customarily used with a fifth-wheel **trailer**:
          (i)     owned by **you** and insured under **our**
                   Travel Trailer insurance program;
                   and
          (ii)    containing living quarters.
  "**Vehicle**" does not include any type of mobile home,
  manufactured housing, or any other wheeled device not
  designed for regular use on public roads.

Motorhome policy, p. 10, Ex. 3 to Joint Statement of Agreed Facts (ECF No. 9-3). Because each

"sub-definition" to **covered vehicle** incorporates the word, **vehicle**, which is limited to vehicles

that are either motorhomes or used with a 5th wheel trailer, the exception to the exclusion only

applies to motorhomes and trucks with attached 5th wheel trailers. For the reasons discussed

below, this exception is narrower than the "insured vehicle" exception to ORS 742.504(4)(b),

and therefore the exclusion is broader in application than ORS 742.504(4)(b)

      **3.**      **The exclusions in both policies are less favorable than ORS
             742.504(4)(b)**

      The exclusions in both policies are less favorable than ORS 742.504(4)(b)

because the policies each define the term used for insured vehicle (covered motorcycle in the

motorcycle policy and covered vehicle in the motorhome policy) narrower than the model policy

provision is defined at ORS 742.504(2)(d)(A), which states:

      (A)     The vehicle described in the policy or a newly acquired or
             substitute vehicle, as each of those terms is defined in the
             public liability coverage of the policy, insured under the
             public liability provisions of the policy; or

At first look, it appears that the statute grants discretion on how the insurer defines the terms newly acquired vehicle and substitute vehicle. However, in *Cantu*, the Oregon Court of Appeals held that the above definition only authorized insurers to define "newly acquired" and "substitute" but that the insurer's definition for those terms could not define "vehicle" in a manner that was narrower in scope than ORS 742.504(2)(m). *Cantu*, 325 Or. App. at 191. ORS 742.504(2)(m) defines vehicle as:

> "Vehicle" means every device in, upon or by which any person or property is or may be transported or drawn upon a public highway, but does not include devices moved by human power or used exclusively upon stationary rails or tracks.

That definition encompasses any powered vehicle that could be used on a highway. Cars, electric bicycles, motorcycles, motorhomes, or even gold carts could apply to this definition.

However, the motorcycle policy does not define "vehicle" so broadly. Instead, the motorcycle policy limits the term "covered motorcycle" to two or three-wheeled vehicles as discussed above. The exclusion's exception for covered motorcycles is narrower than the exception in ORS 742.504(4)(b) for insured vehicles, because insured vehicle is not limited by the number of wheels the vehicle has. This results in the exclusion having a broader reach under the motorcycle policy than under the model policy because the narrower exception applies to fewer vehicles resulting in more vehicles being subject to the exclusion.

Similarly, the motorhome policy limits the term "covered vehicle" to motorhomes or trucks with 5th wheel trailers attached. This is also narrower than the exception in ORS 742.504(4)(b) for insured vehicles, and for the same reason discussed above, results in the motorhome policy's exclusion excluding more vehicles from the UM/UIM coverage.

The narrowness of the exception to the exclusion in both policies results in the Progressive policies excluding more vehicles from UIM coverage than would be excluded under

ORS 742.504(4)(b). Therefore, the coverage under both Progressive policies is less favorable because more vehicles would be subject to the exclusion in the Progressive policies than the exclusion at ORS 742.504(4)(b). Because the exclusion results in less favorable coverage to Plaintiff, the exclusion is unenforceable under both policies. Like in *Erickson*, the exclusion is stricken from the policies. Because Progressive cannot rely upon the exclusion to deny coverage to Plaintiff, Plaintiff is entitled to summary judgment on his claim for declaratory relief.

## VI.    Conclusion

The legislature never intended to prevent Oregonians from accessing the UIM coverage they purchased on multiple policies as excess coverage to the primary coverage afforded by the insurance policy on the vehicle they occupied in the accident. For the foregoing reasons discussed above, Plaintiff respectfully requests that this court grant his Motion for Summary Judgment on First Claim for Relief to uphold the legislature's intent.

DATED this 15th day of November, 2024.

s/ David E. Smith
TYLER E. STAGGS, OSB# 065172
DAVID E. SMITH, OSB# 124591
Spooner Staggs Trial Lawyers
Of Attorneys for Plaintiffs
E-mail: tyler@spoonerstaggs.com
        dave@spoonerstaggs.com

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing **PLAINTIFF'S MOTION**

**FOR SUMMARY JUDGMENT ON FIRST CLAIM FOR RELIEF** to the following:

Andrew S. Moses, OSB No. 983009
Gordon & Polscer, LLC
9020 SW Washington Square Road, Suite 560
Portland, OR 97223
Phone: (503) 242-2922
Fax: (503) 242-1264
Email address: amoses@gordon-polscer.com
  Of Attorney for *Defendant*


☒    by emailing a copy to said attorney at the above email address with consent of counsel;

☒    by serving correct copies thereof, certified by me as such, to attorneys via the United States District Court for the District of Oregon's CM/ECF filing system.

☐    by mailing a copy in a sealed, first-class, postage prepaid envelope, addressed to said attorneys at the above address and deposited in the U.S. Mail;


DATED this 15th day of November, 2024.

s/ David E. Smith
TYLER E. STAGGS, OSB# 065172
DAVID E. SMITH, OSB# 124591
Spooner Staggs Trial Lawyers
Of Attorneys for Plaintiffs
E-mail: tyler@spoonerstaggs.com
        dave@spoonerstaggs.com