**Andrew S. Moses, OSB No. 983009**
amoses@gordon-polscer.com
**Micah R. Steinhilb, OSB No. 084820**
msteinhilb@gordon-polscer.com
**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Road
Suite 560
Tigard, Oregon 97223
Telephone: (503) 242-2922
Facsimile: (503) 242-1264

*Attorney for Defendant*
*PROGRESSIVE UNIVERSAL INSURANCE COMPANY*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| FRED LOFTI,<br><br>                    Plaintiff,<br><br>        v.<br><br>PROGRESSIVE UNIVERSAL INSURANCE COMPANY,<br><br>                    Defendant. | Case No. 3:24-cv-01616-AR<br><br>DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON FIRST CLAIM FOR RELIEF<br>Pursuant to Fed. R. Civ. P 56(a)<br><br>Request for Oral Argument |

**RESPONSE**

Defendant Progressive Universal Insurance Company ("Progressive") hereby responds to Plaintiff Fred Lotfi's ("Lotfi") Motion for Summary Judgment ("Mot."). In support of this Response, Defendant relies upon the district court's file in its entirety, the Joint Statement of Agreed Facts ("Joint Statement") (ECF No. 9) and attached exhibits (ECF Nos. 9-1 – 9-6), the

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR**                    **Page 1**
**SUMMARY JUDGMENT ON FIRST CLAIM FOR RELIEF**

Declaration of Andrew Moses ("Moses Decl.") and attached exhibits, and the Memorandum of Law set forth below.

## MEMORANDUM OF LAW

### I.    Introduction

The question raised in Plaintiff's motion for summary judgment is whether he is entitled to UIM coverage under policies that did not insure the vehicle he operated at the time of the accident, and after receiving full UIM coverage under the policy that did insure his vehicle. Plaintiff has submitted a 27-page brief, a 96-page supporting declaration with exhibits including extensive legislative history, and a 137-page joint statement of agreed facts with exhibits. Progressive has cross-moved for summary judgment on the same issue. All of this might lead the court to believe that this is a complicated question of law. But this matter is actually quite simple. As explained below, the court need only consider whether Plaintiff would be entitled to UIM coverage under Oregon's UIM statutory model policy language under the actual facts of this case. When the court does that, the court will conclude that Plaintiff is not entitled to UIM benefits under the Progressive policies, that Plaintiff is not entitled to summary judgment, and that Progressive is entitled to summary judgment on its separately filed cross-motion.

### II.    Response to Plaintiffs' Statement of Undisputed Facts

The undisputed facts necessary to resolve this Motion and Progressive's Cross-Motion are set forth in the parties' Joint Statement of Agreed Facts (ECF No. 9) and are adopted in their entirety. Defendant provides the following summary of relevant facts:

On August 19, 2020, Plaintiff, Fred Lotfi was rear-ended by an underinsured motorist in a motor-vehicle collision which resulted in injuries to Plaintiff. Plaintiff was driving a 1995 Isuzu Rodeo that was insured under a motor-vehicle liability policy issued by USAA General Indemnity

Company ("USAA"). Complaint at ¶ 3; Joint Statement, pp. 1-2 at ¶ 1 and p. 3 at ¶ 6. The Isuzu Rodeo was owned by the Plaintiff, and was not newly acquired or a replacement vehicle. Joint Statement at p. 3, ¶¶ 6-7.

At the time of the accident, Plaintiff was a named insured on two Progressive policies that insured other vehicles that were not involved in the accident: a 1986 Honda VT500 Shadow motorcycle and a 1989 Tioga Arrow motorhome. Joint Statement, p. 2 at ¶ 2. Progressive insured the 1986 Honda Shadow under a motorcycle policy and the 1989 Tioga Arrow under a motorhome policy. *Id.*

Plaintiff received UIM benefits from USAA, and sought additional excess UIM benefits under the Progressive motorcycle and motorhome policies. *Id.*, p. 2 at ¶ 3. In November 2022, Progressive denied coverage under the two Progressive policies for the 2020 motor-vehicle collision. *Id.*, pp. 3-4 at ¶ 8. The denial was based on an exclusion in both the motorcycle and motorhome policy which excludes UIM coverage for bodily injury sustained while occupying a vehicle owned by the insured that is not insured under the Progressive policy—*i.e.* because Plaintiff was occupying the Isuzu Rodeo insured by USAA at the time of the accident, and because that vehicle was not insured by Progressive, the exclusion applies and there is no additional UIM coverage under the Progressive motorcycle or motorhome policies. *Id.*, pp. 2-3 at ¶¶ 4-5 and 8.

### III. Legal Standards

#### A. Summary Judgment Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

### B. Application of Oregon Law

Federal courts sitting in diversity look to the law of the forum state when making choice of law determinations. *Great Am. Alliance Ins. Co. v. SIR Columbia Knoll Assocs. L.P.*, 416 F. Supp. 3d 1098, 1101 (D. Or. 2019) (*citing Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014)). This case involves interpretation of Oregon insurance policies; therefore, Oregon law applies. *Id.* at 1107.

In interpreting a statute, the court's task is to discern the intent of the legislature. ORS 174.020(1)(a); *State v. Gaines*, 346 Or. 160, 165, 206 P.3d 1042, 1047 (2009) (citing *Holman Trf. Co. et al v. Portland et al,* 196 Or. 551, 564, 249 P.2d 175 (1952)). To do that, the court examines the text, context, and legislative history of the statute being analyzed. *Id.* at 171-72.

### C. UIM Statutes

The UIM statutes, ORS 742.500 to 742.506, apply to UIM coverage in all policies issued in Oregon. ORS 742.502(1). ORS 742.504 includes the statutorily mandated model UIM policy provisions at establish the minimum UIM coverage that every Oregon-issued UIM policy must provide. ORS 742.504. If a policy provides less favorable coverage than the statutory model policy, Oregon courts invalidate the offending provision. *Kremers v. Hagerty Ins. Agency, LLC*, No. 23-35209, 2024 U.S. App. LEXIS 27267 at *1 (9th Cir. Oct. 24, 2024). To determine if a policy provides "less favorable coverage" than the statutory model policy, the court must look at the specific facts of the case, and not at the policy in the abstract. *Id.* at *4. If the court determines that the insured would not be entitled to coverage under the facts even if the policy contained the statutory model policy language, then there is no coverage and the insured is not entitled to summary judgment. *Id.* at *4-*6.

/ / /

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR**                     **Page 4**
**SUMMARY JUDGMENT ON FIRST CLAIM FOR RELIEF**

**IV.    Plaintiff Is Not Entitled to UIM Coverage Under the Progressive Policies or the Statutory Model UIM Policy Language**

There is no UIM coverage under the Progressive motorcycle or motorhome policies, or under the statutory model policy language, because Plaintiff was <u>NOT</u> driving a vehicle insured under the Progressive policies at the time of the accident. The only way Plaintiff can possibly claim coverage, is if the court completely strikes the exclusionary language from the policies, but as explained below, this approach is contrary to established precedent. Even if the court concludes that the Progressive policies have different language than permitted by the statute, in order to determine whether the policies provide less favorable coverage than the model policy language in the UIM statute, the court must determine whether, under the particular facts of this case, Plaintiff would be entitled to coverage under the statutory model language. *Id.* If Plaintiff would not be entitled to coverage, the coverage provided by the Progressive policies is not "less favorable." *Id.* Here, because Plaintiff would not be entitled to coverage under the statutory model policy language, there is no coverage and Plaintiff is not entitled to summary judgment.

**A.    There is No UIM Coverage Under the Progressive Policies**

Both Progressive policies exclude coverage where, at the time of the accident, the insured is not driving a vehicle insured under the respective Progressive policy.

**1.    Motorcycle Policy**

The Progressive Motorcycle Policy, policy number 37196796, provides:

> **EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III.**
>
> Coverage under this Part III will not apply:
> 1.    to **bodily injury** sustained by any person while **occupying** or being struck by a motor vehicle that is owned by or furnished for the regular use of **you** or a **relative**.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR                Page 5
SUMMARY JUDGMENT ON FIRST CLAIM FOR RELIEF**

          This exclusion does not apply to a **covered motorcycle** that
          is insured under this Part III;

      * * *

Joint Statement at pp. 2-3, ¶¶ 2 and 4, and Ex. 2 at 20.

The Progressive Motorcycle Policy defines "covered motorcycle" as:

    4.      **"Covered motorcycle"** mean:
        a.      any **motorcycle** shown in the **declarations page** for
                 the coverages applicable to that **motorcycle**;
        b.      any **additional motorcycle**; and
        c.      any **replacement motorcycle**.

Joint Statement, Ex. 2 at p. 8.

That policy defines "motorcycle" as "any motorcycle, motorbike, motor scooter, or motorized trike that is designed for operation principally upon public roads and has at least two wheels, but not more than three wheels. *Id.*

Under the motorcycle policy, there is no coverage when the insured sustains bodily injury while occupying a motor vehicle owned by the insured that is not a "covered motorcycle." Here, Plaintiff was injured while occupying an Isuzu Rodeo owned by the insured, and that vehicle is not a "covered motorcycle" under the motorcycle policy. Accordingly, there is no coverage under the motorcycle policy for Plaintiff.

    **2.  Motorhome Policy**

The Progressive Motorhome Policy, policy number 37919499, provides:

    **EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS
    CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE
    WILL NOT BE AFFORDED UNDER THIS PART III.**

    Coverage under this Part III will not apply:
    1.      to **bodily injury** sustained by any person while
           **occupying** or being struck by a motor vehicle that is
           owned by or furnished for the regular use of **you** or  a
           **relative**.

    This exclusion does not apply to a **covered vehicle** that is

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR**        **Page 6**
**SUMMARY JUDGMENT ON FIRST CLAIM FOR RELIEF**

insured under this Part III;

Joint Statement at pp. 2-3, ¶¶ 2 and 5, and Ex. 3 at p. 24.

The motorhome policy defines "covered vehicle" as

4.    **"Covered vehicle"** mean:
   a.    any **vehicle** owned by **you** and shown in the **declarations page** for the coverages applicable to that **vehicle**;
   b.    any **additional vehicle**;
   c.    any **replacement vehicle**; and
   d.    a **trailer** owned by **you**.

Joint Statement, Ex. 3 at p. 8. The policy defines "vehicle" as

14.    **"Vehicle"** means a land motor vehicle, including its permanently attached equipment, that:
   a.    has built-in:
      (i)    cooking, refrigeration, sleeping, and bathroom facilities; and
      (ii)   self-contained:
         (a)    heating and/or air-conditioning;
         (b)    drinking water supply system; and
         (c)    110-125 volt electrical power system; or

         * * *

*Id.* at pp. 9-10.

Under the motorhome policy, there is no coverage when the insured sustains bodily injury while occupying a motor vehicle owned by the insured that is not a "covered vehicle," which essentially means a covered motorhome. Here, Plaintiff was injured while occupying an Isuzu Rodeo owned by the insured, and that vehicle is not a "covered vehicle" under the motorhome policy. Accordingly, there is no coverage under the motorcycle policy for Plaintiff.

**B.  There is No Coverage Under the Statutory Model Language**

ORS 742.504(4)(b), which is part of the UIM statute, provides, in part:

This coverage does not apply to bodily injury to an insured while occupying a vehicle, other than an <u>insured vehicle</u>, owned by, or

> furnished for the regular use of, the named insured or any relative
> resident in the same household, or through being struck by the vehicle

(Emphasis added). The statute provides model policy language that excludes coverage to an

insured that occupies a vehicle other than an <u>insured vehicle</u>.

ORS 742.504(2)(d) defines an <u>insured vehicle</u> as follows:

> (A) The vehicle described in the policy or a newly acquired or
> substitute vehicle, as each other terms is defined in the public
> liability coverage of the policy, insured under the public liability
> provisions of the policy; or

> (B) A nonowned vehicle operated by the named insured or spouse if a
> resident of the same household, provided that the actual use
> thereof is with the permission of the owner of the vehicle and the
> vehicle is not owned by nor furnished for the regular or frequent
> use of the insured or any member of the same household.

Under the statutory model language, Plaintiff would not be entitled to UIM coverage under

the facts presented. At the time of the accident, Plaintiff was driving a vehicle that was <u>not insured</u>

under the Progressive policies. ORS 742.504(4)(b) excludes coverage where the insured is driving

a vehicle that is not an "insured vehicle." ORS 742.504(2)(d) defines "insured vehicle" as either

(A) the vehicle described in the policy, or a newly acquired or substitute vehicle; or (B) a

nonowned vehicle the insured borrows. There is no dispute that the Isuzu Rodeo was owned by

the insured, was not newly acquired or a replacement vehicle. Joint Statement at p. 3, ¶¶ 6-7.

Accordingly, under the model policy language, Plaintiff would not be entitled to UIM coverage.

## C. The Exclusions in the Progressive policies are not "less favorable" to the Insured than the Exclusion in ORS 742.504(4)(b)

ORS 742.504 provides, in part: "Every policy required to provide the coverage specified

in ORS 742.502 (Uninsured motorist coverage) shall provide uninsured motorist coverage that in

each instance is no less favorable in any respect to the insured or the beneficiary than if the

following provisions were set forth in the policy. However, nothing contained in this section

requires the insurer to reproduce in the policy the particular language of any of the following provisions[]". Plaintiff argues that the Progressive policies contain policy language that is less favorable to the insured, and concludes that therefore the exclusions in the motorcycle and motorhome policies must be stricken. This analysis is incorrect, and does not follow precent.

The exclusions in both policies are not overbroad and should not be stricken from each policy as unenforceable. Progressive acknowledges that the language in each exclusion, when read with the other definitions in the policies, is different than the statutory model policy language. However, that does not mean that the policies are impermissibly different or that they provide coverage that is less favorable than the statutory model policy language.

The exclusions in both policies are not less favorable than ORS 742.504(4)(b). To determine whether a policy provision is <u>actually</u> "less favorable" than the statutory model provision, the court must look at the specific facts of a case – not the policy in the abstract. *Kremers v. Hagerty Ins. Agency, LLC*, No. 23-35209, 2024 U.S. App. LEXIS 27267 at *3-*5 (9th Cir. Oct. 24, 2024). This is so because ORS 742.504(2)(c)(A) defines "insured" as the named insured as stated in the policy, which means an actual claimant in an actual claim. *Id.* In *Kremers*, the claimant owned two cars and had separate insurance coverage from separate insurance companies on each. *Id.* at *2. He was driving a Mercedes at the time of the accident, sought UIM benefits from the insurer that covered the Mercedes, and that insurer paid UIM policy limits. *Id.* The claimant then sought UIM benefits from the insurance company that insured his other vehicle, an Alfa Romeo, and the insurer denied coverage on the basis that its policy covered only the Alfa Romeo and excluded the Mercedes under the "Regular Use Exclusion." *Id.* at *2-*3. Claimant sought coverage on the grounds that because the Regular Use Exclusion was broader, and therefore less favorable, than the statutory model provision, it was unenforceable. *Id*. at *3. Judge Immergut granted

summary judgment for the insurance company, *Kremers v. Hagerty Insurance Agency, LLC*, No. 3:21-cv-01717-IM, 2023 U.S. Dist. LEXIS 37632 (D. Or. March 7, 2021), *affirmed Kremers v. Hagerty Ins. Agency, LLC*, No. 23-35209, 2024 U.S. App. LEXIS 27267 (9th Cir. Oct. 24, 2024), and the claimant appealed.

The Ninth Circuit affirmed, and held that the policy at issue was not less favorable, because, regardless of the language of the policy exclusion, the insured would not have qualified for coverage even if the policy had included the statutory model language. *Kremers v. Hagerty Ins. Agency, LLC*, No. 23-35209, 2024 U.S. App. LEXIS 27267 at *5-*6 (9th Cir. Oct. 24, 2024). *See also Spear v. State Farm Mut. Auto. Ins. Co.*, No. 23-35356, 2024 U.S. App. LEXIS 27270 at *3-*6 (9th Cir. Oct. 23, 2024) (holding that to determine whether a UIM policy provides coverage "less favorable" than the statutory model policy language, the court must look at the individual facts of the case to determine whether the Plaintiff would be entitled to coverage under the model UIM policy, and rejecting the Plaintiff's claim for UIM coverage under a State Farm policy when she was driving a vehicle insured under a different policy at the time of the accident); *Burright v. State Farm Mut. Auto. Ins. Co.*, No. 23-35357, 2024 U.S. App. LEXIS 27262 at *3-*6 (same).

Plaintiff is not entitled to coverage under the UIM statutory model policy language, and the policies issued by Progressive do not provide coverage less favorable to the insured than the statute. Accordingly, Plaintiff is not entitled to UIM coverage under the Progressive policies.

## V.    The legislature did not intend policyholders to access *unlimited* excess UIM coverage through multiple UIM policies

Plaintiff has submitted an extensive analysis of the legislative history of the UIM statutes. Despite this, <u>none</u> of the legislative history changes the analysis that Plaintiff is not entitled to UIM benefits under the Progressive policies. Defendant responds to Plaintiff's arguments regarding the legislative history only to rebut Plaintiff's arguments.

**A. The history of the Uninsured Motorist Act does not support the theory that the legislature intended to provide UIM coverage when an insured occupied an owned vehicle that had insurance**

The language of ORS 742.504(4)(b) today is not very different from the language first proposed in the 1963 UIM bill. However, despite having similar language, it may be an important exercise to review the changes in bill language and the various statements made by the legislature in support of these changes to discern the intent of the legislature. Plaintiff rests much of his argument on this legislative history, and the conclusions Plaintiff asks the court to draw from that history. However, a careful review of the legislative history reveals (1) that much of what Plaintiff claims is evidence of legislative intent actually consists of statements by industry representatives that provide little insight into what the *legislature* was thinking; (2) that the actual legislative history of the insured vehicle exception is not definitive and does not address the factual situation in this case; and (3) that the one statement in the record about whether an insured might be allowed to stack coverages (which admittedly does not directly address the exclusion here since it addressed stacking coverages when a passenger was injured and could seek UIM benefits under the driver's policy and her own policy, but rather expresses a general proposition) is clear that the legislature did not intend to allow coverages to be stacked and considered UIM coverage to provide only minimum coverage.

**1. House Bill 1809 (1963)**

In 1963 Oregon House Representative Robert E. Jones introduced House Bill (HB) 1809 (amending ORS 736.005 and 736.317). The March 27, 1963, draft bill included language that is similar to what is now ORS 742.504(4)(b) (the "insured vehicle exclusion"):

> "To bodily injury to an insured while occupying an automobile owned by the named insured or any relative resident in the same household, or through being struck by such an automobile."

Declaration of David E. Smith ("Smith Decl.") at ¶ 4, Ex. 1 at p. 7, lines 15-17. However, the House Judiciary Committee proposed an amendment, dated April 22, 1963, that would have stricken that language entirely. Moses Decl.at ¶ 3, Ex. 1 at p. 7, lines 15-17. The written transcript also contains clarification on the meaning of the lines physically drawn through exclusion 4(b) of the bill, "On page 7, delete lines 15 through 29." *Id.* at p. 16.  Accordingly, the House Judiciary Committee clearly indicated an intent to delete the exclusion before HB 1809 was sent to the senate.

At the Senate Judiciary Committee Meeting on May 16, 1963, there continued to be discussions and disagreements between the House bill sponsor, insurance industry representatives, and plaintiffs' lawyers' representatives, further attesting to the fact that there was little agreement about the scope, purpose, and propriety of enacting HB 1809. Moses Decl. at ¶ 4, Ex. 2 at pp. 1-3. Ultimately, the committee suggested that the bill sponsors and insurance company representatives continue to meet to refine the bill and resolve their disagreements *before* bringing the bill back to the Senate Judiciary Committee. *Id.* Little can be said about the legislative intent from the 1963 legislative session considering HB 1809 in general, or the insured vehicle exception specifically, except that there was <u>no clear intent</u> and there remained significant questions and a substantial gulf between legislators, insurance industry representatives, and attorneys on the scope of any new uninsured motorist bill.

## 2. Interim Committee on Insurance (1963-1965)

As a result of the lack of agreement among the House bill sponsors, insurance industry representatives, and plaintiffs' attorneys regarding HB 1809 (1963), the 1963-1965 Interim Committee on Insurance took up the issue of uninsured motorist coverage and referred the matter to the Subcommittee on Reserve, Surplus, and Capital Requirements of Insurance Companies

Engaged in the Business of Casualty or Disability Insurance (also referred to as Subcommittee #4). Moses Decl. at ¶ 5, Ex. 3.

There are two key take-aways from Subcommittee #4's work on the bill. First, on February 15, 1964, bill sponsor Robert E. Jones testified that the bill should <u>not</u> be read as allowing uninsured motorist coverages to stack. *Id.* at p. 4. He explained that a question had arisen in the House Judiciary Committee regarding whether it would be possible to stack coverages, in the example of "an individual with more than one coverage such as being a passenger in a car with coverage on his own car and the person he is riding with has coverage, he is hit by an uninsured motorist and is he entitled to collect two policies or is he restricted to one", and Judge Jones testified that "[t]hey compromised and determined he would be restricted to one, the idea behind the uninsured motorist law being to give minimum protection." *Id.*

Second, the committee also discussed why HB 1809 had stalled in the Senate and did not pass in 1963. Judge Jones testified that the bill had been delayed in the Senate because of confusion about the wording of the bill, and the bill was <u>never finished</u>. *Id.* Senator Mahoney also noted that the bill reached the Senate late in the session when the Senate was extremely busy and the bill more or less hit a traffic jam. *Id.* at p. 5. From these statements, it is clear that there was no agreement about the wording of HB 1809 during the 1963 legislative session.

Plaintiff asserts that Bill Masters testified before Subcommittee #4 that the deletion of the exclusion in House Bill (HB) 1809 by the House Judiciary Committee in 1963 was opposed by insurers, and that Masters' statement clarified the intent of the exclusion as preventing an insured from obtaining *primary* UIM coverage on multiple vehicles by insuring only one vehicle. *See* Plaintiff's Mot. for Summary Judgment at p. 13 (emphasis in original). Plaintiff reads too much into Mr. Masters' statement. The only comment that Mr. Masters made in relation to Exclusion (b)

is that "Such an exclusion should be added." Moses Decl. at ¶ 5, Ex. 3 at p. 11. Plaintiff cannot presume the intent of Mr. Masters when making this statement, when no explanatory statement of intent is in the record. But even more so, this statement by Mr. Masters, an insurance company representative and not a member of the legislature, is merely evidence of a statement the legislature received and may have considered, but it is not evidence of the intent of the legislature.

Exclusion 4(b) to HB 1809, was later re-introduced as part of House Bill 1041 (1965), but again Plaintiff's explanation of legislative intent behind this inclusion is a stretch, *see* Plaintiff's Mot. for Summary Judgment at pp. 13-14, and the record does not support Plaintiff's statements. Plaintiff quotes part of the legislative record, and attributes that statement as part of a letter from Jim Fletcher to Jim Redden. *Id.* at p. 14. However, that statement is actually contained in a letter from Nationwide Insurance Company. The suggested amendments, which is what the letter refers to (amendments suggested by Nationwide Insurance Company, not the subcommittee) include a statement at the top of the document: "The amendments contained herein have been suggested by representatives of the insurance industry and do not necessarily represent the views of all of the insurance industry or of subcommittee #4 of the Legislative Interim Committee on Insurance." Smith Decl. at ¶ 4, Ex. 7 at p. 4. The statement quoted by Plaintiff and attributed to Mr. Fletcher, is contained in the explanation from Nationwide Insurance Company following the text of the proposed amendments. *Id.*, Ex. 7 at p. 8. Although Mr. Fletcher's letter includes a *similar* statement and references the Nationwide letter, *Id.*, Ex. 7 at p. 11, that occurrence is a statement from Mr. Fletcher to Mr. Redden, rather than a statement of Mr. Redden. Accordingly, this is yet another statement by an insurance industry representative included in the legislative record, and at best is evidence of information the legislature considered but it is not evidence of legislative intent.

/ / /

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR**          **Page 14**
**SUMMARY JUDGMENT ON FIRST CLAIM FOR RELIEF**

### 3. House Bill 1041 (1965)

A final draft of the bill was introduced on January 11, 1965, as House Bill (HB) 1041 (1965). The language of HB 1041 (1965) Section 4(b) is identical to what would become ORS 743.792(4)(b) (1967). Plaintiff contends that HB 1041 (1965) did not contain much discussion on the previous exclusion of Section 4(b), aside from the written testimony of insurance industry representative Bill Masters. *See* Plaintiff's Mot. for Summary Judgment at 15. While this statement is accurate, Plaintiffs' analysis of the legislative intent is incorrect. Again, Plaintiff attributes statements by Mr. Masters—an insurance industry representative—as evidence of legislative intent. As with the other statements by Mr. Masters that Plaintiff relies on, at best it is evidence of statements considered by the legislature, but Mr. Masters' statement are not evidence of the *legislature's* intent. And from the minutes of the House Judiciary Committee, where Mr. Masters made his statements, it is clear that there was not even agreement among industry representatives about HB 1041. Eight representatives of insurance companies provided testimony, and each had different recommendations. Moses Decl. at ¶ 6, Ex. 4 at pp. 2-4.

The House Judiciary Committee moved the bill to be reported out DO PASS AS AMENDED. *Id*. at 6. The bill included a memorandum regarding proposed amendments and the bill was submitted with alternative language. The alternative language focused on a possible double-recovery under underinsured motorist and medical payment coverages and shows that the legislature had concerns about the new UM coverage and wanted to prevent a claimant from receiving a windfall. *Id.* at 8-9.

### 4. House Bill 1506 (1967), Senate Bill 31 (1981), and

Legislative records for House Bill (HB) 1506 (1967), which is the bill that ultimately added the exclusion in the model statutory UM policy, do not contain any discussions of the exclusionary

language of section 4(b), so there is no evidence regarding any legislative intent regarding that language.

In 1981, the legislature passed Senate Bill (SB) 31, which expanded UM coverage to include UIM coverage. Again, there is no discussion of the particular exclusion at issue in the legislative record of that bill.

In 2015, the legislature expanded UIM coverage by passing Senate Bill (SB) 411 by changing how UIM benefits were calculated. Prior to SB 411 (2015), an insurer could offset the amount of UIM limits by the amount available from the underinsured driver's liability limits. ORS 742.502(a) (2013). After passage of SB 411 (2015), UIM limits would stack on top of the underinsured driver's liability limit. *See Batten v. State Farm*, 368 Or. 538, 540, 495 P.3d 1222 (2021). Here again, there is no discussion in the legislative record of the particular exclusion at issue.

### 5. Plaintiff Would Not Be Provided Coverage Under Any Version of the Statute

Throughout this entire discussion of the legislative history of the UIM statutes, Plaintiff ignores the fact that throughout each and every version of the bill, including HB 1506 (1967) which ultimately became the law, and the current version of the statute (discussed above), Plaintiff would <u>not</u> be entitled to coverage under the model policy language, because Plaintiff was not driving either of the vehicles insured by Progressive at the time of the accident. *See* Moses Decl. at ¶ 7, Ex. 5 at pp. 19-33 (engrossed copy of bill). The exclusion in HB 1506 (1967) provides:

> "This coverage does not apply to bodily injury to an insured while occupying a vehicle (<u>other than an insured vehicle</u>) owned by, or furnished for the regular use of, the named insured or any relative resident in the same household, or through being struck by such a vehicle."

*Id.* at p. 27, lines 21-25 (emphasis added).

Plaintiff urges the court to interpret "insured vehicle" as *any vehicle* which was insured by *any insurance company*. But it is important to note that the bill defined "insured vehicle" very specifically, and Plaintiff's interpretation runs contrary to that definition. The bill defined "insured vehicle" to mean either "the vehicle described in the policy or a newly acquired vehicle" or "a nonowned vehicle operated by the named insured * * * provided * * * such vehicle is not owned by nor furnished for the regular or frequent use of the insured * * * ." *Id.* at p. 23, lines 4-16. Accordingly, when these two sections are read together, there would be no coverage for Plaintiff: "This coverage does not apply to bodily injury to an insured while occupying a vehicle (other than an insured vehicle)": the "insured vehicles" at issue on the Progressive policies are Plaintiff's motorcycle and motorhome, and at the time of the accident, Plaintiff was occupying his Isuzu Rodeo, which is not an "insured vehicle." Therefore, at the time of the accident, Plaintiff was not occupying a vehicle insured by Progressive, and thus, there is no coverage.

Simply put, under the plain language of the statute, Plaintiff is not entitled to UIM coverage under the Progressive policies, and nothing in the legislative history changes this result.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR**                    **Page 17**
**SUMMARY JUDGMENT ON FIRST CLAIM FOR RELIEF**

## VI.    Conclusion

Under either the statutory model policy language or the two Progressive policies, Plaintiff is not entitled to UIM coverage. Accordingly, the Progressive policies do not provide coverage less favorable to the insured than the statutory model policy language. Plaintiff is not entitled to UIM coverage from Progressive, and Plaintiff is not entitled to summary judgment.

For the foregoing reasons discussed above, Defendant respectfully requests that this court deny Plaintiff's Motion for Summary Judgment on First Claim for Relief.

DATED this 27th Day of December, 2024.

Respectfully Submitted:

**GORDON & POLSCER, L.L.C.**

By: *s/ Andrew S. Moses*
     Andrew S. Moses, OSB No. 983009
     *amoses@gordon-polscer.com*

*Of Attorneys for Defendant*
*PROGRESSIVE UNIVERSAL*
*INSURANCE COMPANY*

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR          Page 18**
**SUMMARY JUDGMENT ON FIRST CLAIM FOR RELIEF**